UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JULIE SHEPPARD, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action 4:12-cv-04022-SOH |
| | § | |
| GOOGLE, INC., | § | |
| | § | |
| Defendant | § | |
| | § | |
| | § | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR REMAND[1]

Plaintiff, Julie Sheppard, by and through her undersigned counsel, submits her Reply Brief in Support of the Motion for Renewal and would respectfully show as follows:

### THERE IS NO PREEMPTION AND NO SUBSTANTIAL FEDERAL QUESTION

**The Congressional directive is clear: There Is No Preemption**.

Google's reliance on *Muskovich* and its progeny is misplaced. The *Muskovich* court failed to analyze the Stored Communications Act's legislative history. Not only is *Muskovich* wrongly decided, it is not binding on this Court.

The math as to the number of courts rejecting Google's preemption arguments is compelling (over seventeen), and close to four decades worth of jurisprudence on the very issues before the Court cannot be ignored. Starting with the original Wiretap Act[2], on three (3) separate

---

[1] Since the filing of Plaintiff's Motion to Remand, Plaintiff has amended her Complaint for Declaratory Relief. However, for purposes of remand, "[t]he determination is made on the basis of the record at the time of removal." *Keene Corp. v. United States*, 508 U.S. 200, 113, S. Ct. 2035, 2040, 124 L. Ed. 2d 118 (1993). As such, Plaintiff's original motion is still ripe.

[2] While Google scoffs at any citation to pre-1986 cases and the historical importance of the original Act and the decades of jurisprudence, the courts rejecting Google's arguments put great weight in the history of ECPA. Further, if there is no expressed preemption, then none of the cases cited by Google overcome the nearly four decades of interpretation against Google's arguments.

occasions within the legislative history, Congress expressly stated that that Act ***does not preempt***

State law:

> Section 2520 of the new chapter authorizes the recovery of civil damages. It provides that any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person, as defined in section 2510(6), discussed above, who intercepts, discloses or uses or procures any other person to intercept disclose or use such communication. The scope of the remedy is intended to be both comprehensive and exclusive, ***but there is no intent to preempt parallel State law.***

S. Rep. 90-1097, S. Rep. No. 1097, 90th Con., 2nd Sess. 1968, 1968 U.S.C.C.A.N. 2112, 2196

(emphasis added). *See* Exhibit A. As to the use or disclosure of intercepted content, Congress

expressly stated:

> Subparagraphs (c) and (d) prohibit, in turn, the disclosure or the use of the contents of any intercepted communication by any person knowing or having reason to know the information was obtained through an interception in violation of this subsection. . . . ***There is no intent to preempt State law***.

*See* Exhibit A, 1968 U.S.C.C.A.N. at 2181 (emphasis added). For its third explicit expression

that no preemption of State law is to be inferred, Congress stated:

> The provisions of section 2512 banning the manufacture, distribution, sale, possession, and advertising of wiretapping and eavesdropping devices will significantly curtail the supply of a variety of devices. ***There is no intent to preempt State law.***

*See* Exhibit A, 1968 U.S.C.C.A.N. at 2183 (emphasis added). As such, on no less than three (3)

occasions, Congress expressly stated, "There is no intent to preempt State law."

Google asserts the 1986 amendment and inclusion of § 2518(10)(c) within ECPA

expressly changed the intent of Congress. Yet, seven courts, (1) *Leong v. Carrier IQ, Inc.*, (2) *In*

*re Google Inc. St. View Elec. Communs. Litig;*, (3) *Lane;* (4) *Valentine;* (5) *Ideal Aerosmith,*

*Inc.;* (6) *Bansal;* and (7) *In re NSA Telcomms. Records Order Litig.,*[3] have, after actual analysis of the legislative history, rejected Google's supporting authority and interpretation of § 2518(10)(c). Section 2518 is entitled, "Procedure for interception of wire, oral, or electronic communications." The entirety of Section 2518 involves, and is limited to, a party applying to a court for the authorization to intercept a wire, oral, or electronic communication and remedies associated with the use of that information at trial. That is the context of Section 2518.

Notably, Congress commented on Section 2518's purpose within the same legislative history cited above. "Section 2518 of the new chapter sets out in detail the procedure to be followed in the interception of wire or oral communication." 1968 U.S.C.C.A.N. at 2189. Section 2518(1) requires a written application and provides for the type of information to be included in the application. 1968 U.S.C.C.A.N. at 2189. Section 2518(2) provides that the judge may require additional evidence, if needed, in support of the application. 1968 U.S.C.C.A.N. at 2191. Sections 2518(3)-(6) deal with the actual order entered and the scope of that order—all referenced and in relation to "this chapter [18 USCS § 2510 et seq.]." 1968 U.S.C.C.A.N. at 2191-93. Section 2518(7) provides for certain exceptions to the preceding identified sections. 1968 U.S.C.C.A.N. at 2193. Section 2518(8) involves the requirements for preservation of the authorized interception, and Section 2518(9) limits when a intercepted recording can be used in a proceeding. 1968 U.S.C.C.A.N. at 2193-95.

When placed in the context of the statutory language of § 2518, Section 2518(10)'s language becomes clear in its meaning. If the statutory context alone is not sufficient, Congress clarified the meaning of § 2518 and its effect. Section 2518(10)(a) discusses that an "aggrieved

---

[3] *See Leong v. Carrier IQ, Inc.*, 2012 U.S. Dist. LEXIS 59480, * 11 (C.D. Ca. April 27, 2012); *In Re Streetview Elec. Communs. Litig.*, 794 F. Supp. 2d 1067 (N.D. Cal. 2011); *Lane v. CBS Broad, Inc.*, 612 F. Supp. 2d 623 (E.D. Pa. 2009); *Valentine v. Nebuad, Inc.*, 804 F. Supp. 2d 1022 (N.D. Cal. 2011); *Ideal Aeorosmith, Inc. v. Acutronic USA, Inc.*, 87 U.S.P.Q. 2d (BNA) 1756 (W.D. Pa. 2008); *Bansal v. Russ*, 513 F. Supp. 2d 264 (E.D. Penn. 2007); *In re NSA Telecomms. Records Order Litigation*, 483 F. Supp. 2d 934 (N.D. Cal. 2007).

person" may **move to suppress** a communication intercepted pursuant to 18 U.S.C. §§ 2510 *et seq.* upon a showing of certain enumerated events. *See also* 1968 U.S.C.C.A.N. at 2195. If that intercepted communication is suppressed, § 2518(10)(b) states that the United States has the right to appeal that decision.

Congress expressly stated that § 2518 was to be read in "connection with sections 2515 and 2517, discussed above, *which it [2518] limits*." 1968 U.S.C.C.A.N. at 2195 (emphasis added). As such, Congress expressly stated that § 2518(10) limits only "the remedy for the right created by section 2515." 1968 U.S.C.C.A.N. at 2195. Three paragraphs later, in its discussion as to § 2520 and *the civil remedies* available pursuant to ECPA, Congress expressly stated, "there is no intent to preempt parallel State law." *Id.* at 2196.

In reliance on this legislative history, multiple state and federal courts have held, ruled, noted, or referred to the congressional directive that (1) the Wiretap Act did not preempt all state law, (2) Congress' intent was to establish *minimum* standards, and (3) more restrictive state standards were not preempted. *See United States v. Smith*, 726 F.2d 852, 859 (1st Cir. 1984) (finding state statute "entirely consistent with the intent of Congress."); *State v. Politte*, 664 P.2d 661, 671 (Ariz. App. 1982) ("We hold the Arizona wiretap statutes withstand the claim of preemption and are not unconstitutional."); *Navarra v. Bache Halsey Stuart Shields, Inc.*, 510 F. Supp. 831 (E.D. Mich. 1981) ("The Michigan eavesdropping statute is not preempted by federal law. For preemption to occur, there must be actual conflict between the two statutes in the same area, or there must be evidence of congressional design or intent to preempt the field . . . . Neither ground for federal preemption is present."); *State v. Williams*, 617 P.2d 1012, 1017 (Wash. 1980) ("Since Congress did not intend to preempt more protective state requirements . . . and since none of the provision in the federal law conflicts with the application of more

protective requirements in state criminal proceedings, the federal wiretap statute does not preempt the more rigorous Washington privacy act"); *State v. Hanley*, 605 P.2d 1087, 1090 (Mont. 1979) ("By enacting Title III, however, Congress did not intend to preempt state legislation from the field of electronic surveillance . . . . Rather, it sought to permit concurrent regulation of the subject."); *United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977); *United States v. Hall*, 543 F.2d 1229, 1232 (9th Cir. 1976); *Commonwealth v. Vitello,* 327 N.W. 2d 819 (Mass. 1975); and *People v. Jones*, 30 Cal. App. 3d 852, 855 (Cal. App. 1973) ("Since the Congress intended to allow the states to supplement the federal law, the state law will be preempted only if it conflicts with, or is it is more permissive than, the federal law."). As such, the Wiretap Act has been consistently held to allow parallel and more rigorous state-law causes of action.

The sole question before the Court becomes:  Did the 1986 amendment and addition of § 2518(10)(c) *change* Congressional intent and almost twenty (20) years of jurisprudence holding that the States were free to regulate, through parallel state-law causes of action, the same conduct proscribed by ECPA and regarding electronic communications?  The overwhelming answer is, "No."  The 1986 amendments did not change Congress' original intent to allow parallel or more rigorous state-law causes of action.

First, the statutory language and legislative history evidences that the intent of § 2518(10)(c) was limited in its application to prevent persons from suppressing evidence based on electronic communications for non-constitutional violations.  When Congress amended § 2518 in 1986 and added § 2518(10)(c), it did so for the specific purposes of underscoring "that, as a result of discussions with the Justice Department, the Electronic Communications Privacy Act does not apply *the statutory exclusionary rule* contained in title III of the Omnibus Crime

Control and Safe Streets Act of 1968 to the interception of electronic communications." *See* Exhibit B, Senate Report 99-541, October 17, 1986, Page 23, 1986 (emphasis added). Importantly, it is Congress' next sentence which undercuts Google's argument and *Muskovich's* conclusion:

> Similarly, the Electronic Communications Privacy Act does not amend the Communications Act of 1934. **Conduct in violation of that statute, will continue to be governed by that statute.**

*Id.* (emphasis added). If, as Google argues, § 2518(10)(c) provides the exclusive remedy for any act covered by ECPA, then a corresponding violation of the Communications Act of 1934 and any remedies sought thereof could never occur. Yet, the Senate recognized that such an overlap in illegal activity and remedy would not be exclusive to only ECPA.

More importantly, the senators debating the amendments to be made to the Wiretap Act recognized not only the existence of State laws in the field of electronic communications, but also noted that such laws did and would go further than the contemplated amendments in the field of electronic communications. In fact, the senators specifically questioned the impact of the new amendments and ECPA on State law:

> Senator MATHIAS.   Thank you very much, Mr. Moorhead.   We appreciate your being here.
>
> **Let me ask you both if you see that Senate Bill 1667 or House bill 3378 would have any detrimental impact on State laws that are designed to enhance communications privacy.**
>
> Mr. KASTENMEIER. **Mr. Chairman, if I may respond, I would say it would have no detrimental impact on State laws.** It is true that some States have begun to legislate in the area. I have in mind California, which recently enacted a statute to protect cellular telephone calls.
>
> Even more widely, many States have computer crime legislation. Since, basically, the bill, S. 1667, would amend the Wiretap Act, it would, in fact, preempt State law, as that act did originally, and would set one consistent standard.

> ***It is also true that States would be free to enact more restrictive laws in the area if they so chose.  So, to that extent, States are unaffected.***  But, otherwise, there would be a minimum Federal standard, obviously applicable universally in this country.

> Mr. MOORHEAD.  There is no question that some States have laws that go much farther in this direction than others, and it is very difficult to pass legislation that does not step on some toes someplace.

> But I know, insofar as my own State, in particular, the problems that we are approaching with this legislation are very serious.  We live in an area in California where the electronics world has come to life in all of its capabilities, and many of the radio and telecommunications people out there are concerned about the problem that this bill is trying to protect.

> ***In the long run, I think that the laws of our State will certainly conform with the legislation that we have here, and I seriously doubt if there will be any adverse effect.***

*See* Exhibit C, Senate Hearing 99-1006, November 18, 1985, page 38 (emphasis added).  As such, the Senate recognized newly enacted and existing State laws in the field of electronic communications, recognized that States would enact laws in the field of electronic communications, and indicated a desire and belief that ECPA would not affect the States' rights to have parallel or more rigorous state laws in the field of electronic communications.

*EVERY* court analyzing the legislative history along with § 2518(10)(c) has ruled that § 2518(10)(c) is limited in application to matters involving suppression of evidence.[4]  *See Leong v. Carrier IQ, Inc.*, 2012 U.S. Dist. LEXIS 59480, * 11 (C.D. Cal. April 27, 2012) ("In the Court's view, the cases finding complete preemption are not persuasive . . . . In this Court's view, that provision [§ 2518(10)(c)] ***does not even impact the question of preemption***, but rather focuses

---

[4]*No analysis of the legislative history* was conducted by the courts cited by Google as authority for expressed preemption.  The unpublished opinion of *Muskovich* makes a conclusory statement about the expressed preemptive effect of the *SCA's* § 2708, without any analysis.  The court in *Quon v. Arch Wireless Operating Co., Inc.*, 445 F. Supp. 2d 1116, 1138 (C.D. CA 2006), merely cites to the same language of § 2708 and the "unpublished decision" of *Muskovich*.  While *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148 (C.D. CA 2007), does actually cite to § 2518, *Bunnell* provides no analysis and merely cites to *Quon*.

on the scope of available federal remedies when a violation of the statute has been established." (emphasis added)); *In re Google Inc. St. View Elec. Communs. Litig.*, 794 F. Supp. 2d 1067, 1085 n. 12 (N.D. Cal. 2011) (stating, "The legislative history supports the proposition that the provision was appended to the ECPA solely to address suppression of evidence by criminal defendants."); *Lane v. CBS Broad, Inc.* 612 F. Supp. 2d 623, 637-638 (E.D. PA 2009); and *Valentine v. Nebuad, Inc.,* 804 F. Supp. 2d 1022, 1029 (N.D. Cal. 2011) ("The quoted passage [§2518(10)(c)] from the ECPA does not explicitly provide for the preemption of state law, which is the bar that must be met before express preemption may be found," and noting that § 2518(10)(c) is an exclusionary rule provision).  In addition, *ALL* of the courts that have analyzed the same legislative history in association with § 2708, the corresponding remedies section within the SCA, have also ruled that the exclusive "judicial remedies" language is limited in purpose to prevent parties from suppressing evidence based upon electronic communications. *See In re NSA Telecomms. Records Order Litigation*, 483 F. Supp. 2d 934, 939 (N.D. Cal. 2007) ("In view of the similarity of the language between the two provisions, and given the House Report's express reference back to the discussion of § 2518(10)(c), the court agrees with plaintiff's interpretation of the state [limited in purpose]."); *Bansal v. Russ*, 513 F. Supp. 2d 264, 282-83 (E.D. Penn. 2007) ("Contrary to Defendants' assertion, however, the purpose of this provision is not to expressly preempt state law, but rather to establish that the exclusionary rule is not a remedy provided for by the Act."); and *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2008 U.S. Dist. LEXIS 33463,   (W.D. PA 2008) (analyzing SCA and finding no express preemption, no field preemption, and no conflict preemption).  As such, the *seven* courts that have actually analyzed the legislative history of the 1986 amendments have concluded that the language of § 2518(10)(c) offered by Google *does not* expressly preempt state law.

Finally, in its application, Section 2518(10) is routinely referenced as a "suppression remedy" provision. *See United States v. Ojeda Rios*, 495 U.S. 257, 260 n. 1, 110 S. Ct. 1845, 109 L. Ed. 2d 224 (1990) ("Title III also contains a general suppression remedy, not applicable in this case, that provides for *suppression when electronic communications have been unlawfully intercepted . . . .* See 18 U.S.C. § 2518(10)") (emphasis added). Further, when discussed, other courts have highlighted the limited scope of § 2518(10)(c). *See United States v. Amanuel*, 615 F.3d 117, 125 (2010) ("As noted in the legislative history of the ECPA, Congress *sought to limit suppression of electronic communications* to those instances in which the Fourth Amendment has been violated, *except where the statute provides an exclusionary remedy in specific circumstances* (we discuss one such instance below.)." (emphasis added)). This narrow construction of § 2518(10)(c)'s application is consistently applied. *See United States v. Steiger*, 318 F.3d 1039, 1051 (11th Cir. 2003) ("To the extent Steiger argues that §§ 2517 and 2518(10)(c) create a suppression remedy for unlawful interceptions of electronic communications under the statute, the legislative history makes clear that a statutory suppression remedy does not exist for unlawful interceptions of 'electronic communications.'"). As such, ***EVERY*** court that has examined the 1986 amendment in conjunction with the legislative history has either ruled, noted, observed, or commented on the fact that § 2518(10)(c) has limited application *within and as applicable to* ECPA. As such, Congress neither eliminated nor sought to eliminate with the passage of the 1986 amendments its historic intent of allowing parallel or more rigorous state-law causes of action.

**There is no field preemption.**

First, Plaintiff's claims for declaratory judgment are based on issues involving personal property: declaration of personal property interest in data, declaration that Google had no

property interest, and a declaration that Gmail users are without authority or do not grant Google authority over Plaintiff's property. As such, Plaintiff's Arkansas personal property claims are not within the same field as ECPA. *See In re Google Inc., St. View Elec. Communs. Litig.*, 794 F. Supp. 2d at 1087 ("Cal. Bus. & Prof. Code §§ 17200, et seq., does not seek to regulate the same field as the federal Wiretap Act."). Arkansas' personal property laws are not limited to applications involving electronic communications, and ECPA does not regulate the field of Arkansas personal property claims. Plaintiff's potential supplemental claims for conversion, theft of property, and bailment violation also deal solely with personal property. As such, there doesn't even need to be a field preemption analysis because personal property claims are not within the field of electronic communications.

But even considering the entirety of Plaintiff's claims, the most recent case of *Leong v. Carrier IQ, Inc.*, 2012 U.S. Dist. LEXIS 59480, * 12-13 (C.D. Ca. April 27, 2012), provides one of the best descriptions of the backdrop of ECPA and historical preemption analysis as applied to the Wiretap Act and ECPA. In its order remanding the case for lack of federal subject matter jurisdiction over claims brought pursuant to California Penal Code § 631, an interception statute, the court in *Leong* stated:

> *Bunnell* also found complete preemption, on the basis of the comprehensive nature of the legislation and the creation of a private right of action where the statute has been violated. 567 F. Supp. 2d at 1154 (citations omitted). The court in *In re Google Inc. Street View* reached the same conclusion on similar reasoning. 794 F. Supp. 2d at 1085. However, the analysis in these cases ***ignores the great weight of authority holding that one of the principal purposes of the federal statute was to establish minimum standards with which states must comply***. In that regard, *Bunnell* and *In re Google Inc. Street View* **reflect a marked departure** from the preemption analysis of courts in this and other districts and circuits in the more than four decades since the Federal Wiretap Act was enacted. ***In light of the clarity of the 1968 and 1986 Senate Reports that the federal law is intended to establish minimum standards and not to preempt state laws that meet these standards; the long-standing view of the States and courts that States are free to enact legislation that is more restrictive than the federal***

> ***law; and the rarity with which preemption applies,*** *see Bruesewitz v. Wyeth,* 561 F. 3d 233, 240 (3d Cir. 2009) ("When faced with two equally plausible readings of statutory text, we 'have a duty to accept the reading that disfavors preemption.'") (quoting *Bates v. Dow Agrosciences,* 544 U.S. 431, 449, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005), ***the Court concludes that the Federal Wiretap Act does not completely preempt California's Invasion of Privacy Act. Accordingly, federal subject matter does not exist in these actions***, and the Court **GRANTS** Plaintiffs' motions for remand.

(emphasis added). With the exception of *In re Google Inc. Street View*, which *Leong* notes as a "marked departure" from the historical preemption analysis, ***EVERY*** case citation Plaintiff could find that involved a court that analyzed the legislative history of the statute has ruled there exists no preemption as to parallel or more restrictive State court laws. *See as examples Bishop v. State*, 526 S.E.2d 917, 920-921 (Ga. App. 1999) ("While the construction of Title III would make the evidence in this case admissible, there has been no federal preemption . . . . Accordingly, O.C.G.A. § 16-11-62 et seq. was not preempted by Title III and should have been applied to this case."); *Kearney v. Saleomon Barney, Inc.*, 137 P.3d 914, 921 (Cal. 2006) ("Accordingly, there is no basis for concluding that application of California law is preempted by federal law.").

Likewise, ECPA's legislative history supports only one conclusion regarding "field preemption:" Congress specifically envisioned parallel and more rigorous state laws and causes of action. As explained above and by the court in *Leong*, the 1968 and 1986 Senate Reports and hearings make it abundantly clear that a minimum federal law was intended and states were free to have parallel and more rigorous laws in the area of electronic communications. *See* Exhibit C, page 38 ("It is also true that States would be free to enact more restrictive laws in the area if they so chose.").

Second, none of the alleged causes of action brought by Plaintiff can be deemed less restrictive or offer less protection than ECPA.  An analysis of the elements of some of Plaintiff's claims are as follows:

1.      The data in Plaintiff's email is her personal property as recognized by Arkansas common law and statutory language.  ECPA has no role in this analysis.

2.      Google has no proprietary interest in Plaintiff's personal property.  In fact, Google disclaims ownership in the data contained in Plaintiff's email.  *See Google Terms of Service*, http://www.google.com/intl/en/policies/terms/ ("You retain ownership in the any intellectual property rights that you hold in that content.  In short, what belongs to you stays yours.").  ECPA has no role in this analysis.

3.      The Gmail users' license back to Google enabling Google to use, host, store, reproduce, modify, create derivative works, communicate, publish, or distribute a Gmail user's content is *limited to only two situations*: (a) when the Gmail user actually uploads content to a Google Service or (b) when a Gmail user actually submits content to a Google Service.  *See Google Terms of Service*, http://www.google.com/intl/en/policies/terms/ ("Your Content in our Services").  As alleged in the present case, Google takes Plaintiff's property prior to the Gmail user ever receiving the email.  While Plaintiff asserts the Gmail user is without any authority to authorize any action because the Gmail user has yet to receive the property (more restrictive than ECPA), the Gmail user has certainly not licensed or authorized Google in any way to use the property because the Gmail user has not uploaded or submitted the content.  ECPA has no role in this analysis.  Even if ECPA were considered, Google has contractually limited its access and use to Gmail user's content in only two very limited situations.  From a property law perspective, Google has by its own Terms of Service contractually acquired *no rights* from the Gmail user

when set in the context of Plaintiff's pleadings.[5]   Accordingly, Plaintiff's request for declaratory judgment seeks greater protection than afforded by ECPA.

4.      Plaintiff's potential claim for conversion requires Plaintiff to demonstrate only that Google has exercised dominion over Plaintiff's property inconsistent with Plaintiff's rights in her property.   ECPA has no role in these elements.   Even if ECPA were considered, any act contrary to Plaintiff's rights in her property would amount to a greater restriction on behalf of property interests than that afforded by ECPA, and, therefore would not be preempted.

5.      Likewise, Plaintiff's potential statutory claims are consistent with or more restrictive than ECPA.   Section 5-41-104, Computer Trespass, was enacted in 1987 following the 1986 amendments creating ECPA.   *See A.C.A. § 5-41-101*, "Purpose."   Section 5-41-202 was enacted in 2001, subsequent to ECPA.   Both are parallel or more restrictive in the protection against computer related crimes than ECPA.   As such, they are not preempted.

As Plaintiff's claims are not preempted, either by expression of Congress or based upon ECPA's presence in the field of electronic communications, remand is appropriate.

**There Is No Substantial Federal Question.**

Plaintiff's state law claims raise no federal issue.   No federal issue need be determined in order to rule on Plaintiff's state law claims arising in property law or the Arkansas penal code. In fact, even Google's ECPA consent defense argument, while inapplicable as already briefed and ignored by Google, cannot overcome the rights in Plaintiff's property.   As to Plaintiff's property, only Plaintiff has the authority to grant possessory or ownership interests in her property.   By analogy to a wiretap or interception law, if there is to be consent—it must be from the actual property owner.   Accordingly, even if ECPA's consent provision could be asserted as

---

[5] Any claim by Google to the contrary, i.e. pursuant to ECPA's consent provision, would actually put Google in breach of contract with its Gmail users—a violation of state law rendering the consent provision inapplicable.

a defense, Arkansas property law requires additional authorization by one with authority to act over personal property: the property owner.  Whether couched as a two-party consent analogy or consent as to a particular person, no federal question need be determined to address any element of Plaintiff's causes of action.

In this regard, Plaintiff will address Google's statement that Plaintiff erroneously relies upon *Meredith v. Gavin*, 446 F.2d 794 (8th Cir. 1971).  As with its preemption argument, Google ignores the body of case law supporting Plaintiff's position.  *Meredith* was cited by Plaintiff to demonstrate Congress' intent that the Wiretap Act could not be used to commit a tortious act, like the wrongful taking of another's personal property.  *Meredith* accurately and correctly quoted the legislative history as to the importance and meaning behind the limitation to the consent provision.  While Plaintiff acknowledges that the language "injurious act" was later removed from the statute, certainly Google must also acknowledge that the phrase "tortious act in violation of the . . . laws . . . of any State," has forever been a part and still is part of the statutory language.  Indeed, the ten (10) or so courts that have cited to *Meredith* subsequent to the 1986 amendments had no trouble with *Meredith's* explanation of the legislative history and holding that congressional intent established that an actor cannot use ECPA's consent to allow an offending party to do something in which it otherwise had no right to proceed, i.e. a tortious act. One such case from the Second Circuit, *decided in 2010*, found that the Eighth Circuit in *Meredith* had "aptly observed" the congressional intent of Wiretap Act preventing a party from using an interception in a manner in which the offending party had no right to proceed.  *See Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010).  The great weight of authority holds that Google cannot use ECPA do to what it otherwise had/has no right to do.

Interestingly, Google hasn't indicated one way or the other whether it asserts once it intercepts an electronic communication pursuant to ECPA, even by consent, if there is any limitation on its (1) use thereafter of that property, (2) its rights to possessory interest in the information, or (3) its property interest in the information.  Without taking such a position, ECPA's consent provision may be wholly irrelevant.  Instead Google accuses Plaintiff of listing a "parade of horribles" and states that Plaintiff "incorrectly suggest[s]" that the case is about Google's unlimited use of other types of personal property.  Google attempts to rebut Plaintiff's illustration of what can and will happen if Arkansas property claims are preempted by simply saying, "Trust Us."

Either Google can use ECPA to actually acquire property rights in matters it otherwise could not or it can't use it.  The legislative history of ECPA, however, and specifically Senator Hart's statement against the ability to acquire "business secrets" (personal property), demonstrate that the answer is, "No," ECPA can't be used to acquire property rights when one wouldn't otherwise have a right to them.  This Court can make that decision and rule that no federal question as to ECPA consent exists.  In the alternative, this Court could also rule that the elements of Plaintiff's claims as identified above don't involve the ECPA consent provision at all because only a person with proprietary interests in personal property can vest authority in and over that property.  Either way, no federal question is involved in Plaintiff's claims.

Each element of Plaintiff's claims requires no application of federal law.[6]  There are no federal issues as to whether Plaintiff has a property interest in her data.  There are no federal

---

[6] It is important to note that while Plaintiff has included the possible supplemental causes of action in her pleading, the court has not ruled on her declaratory judgment, and Plaintiff has not filed the application (i.e., a petition) for show cause.  Defendant utilizes half of its now moot Motion to Dismiss attacking Plaintiff's supplemental claims and declaratory judgment under federal law concepts when such matters in Plaintiff's complaint are based solely on Arkansas law—not federal law.  Arkansas law on issues such as standing, use of declaratory judgment proceedings, and the procedural components of Arkansas Code Annotated § 16-111-110 are not to be reviewed in accordance with federal principles for similar actions in a federal forum.  Procedurally, if a court rules in Plaintiff's favor on the

issues as to whether Google has a property interest in Plaintiff's data.  There are no federal issues as to whether Gmail users have a property interest in Plaintiff's data.

Finally, as to Plaintiff's additional cause of action for appropriation of name and likeness, use of Plaintiff's name, likeness, and identity has nothing to do with ECPA.  In addition, Plaintiff's potential supplemental claims likewise have nothing to do with ECPA and require no interpretation of any federal issues.  As explained in by the court in *Lane,* "We are satisfied that the state-law claims in Plaintiff's Complaint [eighteen state-law claims including defamation, false light, invasion of privacy, Pennsylvania wiretap act violations, unlawful access to stored communications under Pennsylvania law, etc.] do not necessarily raise federal issues that are actually disputed and substantial."   *Lane v. CBS Broad, Inc.,* 612 F. Supp. 2d at 635.  Accordingly, remand is appropriate.

## THIS COURT LACKS DIVERSITY OF CITIZENSHIP JURISDICTION

Google must "show," not just allege, "by a preponderance of the evidence that the amount in controversy exceeds the federal court's minimum threshold for jurisdiction." *Tuberville v. New Balance Ath. Shoe, Inc.*, No. 1:11-cv-0101, 2011 U.S. Dist. LEXIS 45894, *5 (W.D. Ark. Apr. 21, 2011).   Google fails to offer a single example of any evidence demonstrating a dollar amount for Plaintiff's claims.  Thus, Google failed to "show" any "evidence" for purposes of removal.   As such, this Court has no evidence before it of any value as to an "amount in controversy."

First, it is simply untrue that Plaintiff "suggests that the 'value' of the equitable relief she seeks—declarations and show-cause orders—could approach $75,000."  Google Response, page 15.  Plaintiff alleged, as is her right, that she limited any amount in controversy to less than

---

declaratory judgment, then, as the statute provides, Plaintiff will file the additional application by petition to have Defendants  "show cause" pursuant to § 16-111-101.  If the Court retains jurisdiction, Plaintiff will amend her complaint to conform to any federal pleading/substantive requirements.

$75,000.  That is not sufficient to provide Google with any evidence that Plaintiff's amount in controversy could remotely approach that figure.

Second, *Bell* is wholly distinguishable because Iowa law prevented Bell from stipulating in the complaint a certain dollar figure for the amount in controversy.  As such, the court in *Bell* ruled that such language in Bell's complaint was a nullity and *suggested* that apart from the pleadings Bell could have filed a separate stipulation.  *Bell v. Hershey Co.,* 557 F.3d 953, 958 (8th Cir. 2009).  Notably, the *Bell* court specifically recognized that Arkansas does not have the same prohibition.  *Id.*  As such, pursuant to Arkansas Rule of Civil Procedure 8(a) and Arkansas Code Annotate § 16-63-221, a separate formal stipulation outside the complaint is not required.

In fact, the cases most relied upon by Google involved pleadings with *no expressed limitations* on the amounts in controversy or did not involve remand issues at all.  *See Gilmer v. Walter Disney Co.,*  915 F. Supp. 1001 (W.D. Ark. 1996) (no disclaimer); *Bowles v. Osmose Utils. Servs.*, 2004 U.S. Dist. LEXIS 31484 (W.D. Ark. 2004) (not a remand case); *Bank Doctors LTD. v. Metro Prop. & Cas. Ins. Co.*, 637 F.3d 827 (7th Cir. 2011) (no disclaimer).  As an example, Google champions the decision in *Price v. USAA Casualty Ins. Co*, 2012 U.S. Dist. LEXIS 21787 (W.D. Ark. 2012), for its language about what is to be considered for the "amount in controversy."  While Google spends considerable time telling the Court what should be considered in the "amount in controversy" analysis, Plaintiff doesn't dispute what is to be considered in the "amount in controversy."  Plaintiff disputes Google's continued citation to cases wherein no expressed limitation as to relief was contained in those plaintiff's pleadings.  Such is the case with *Price*.  Because *Price* was not a true remand case,[7] no analysis of the

---

[7] The case had already been removed, but later the magistrate judge determined that subject matter jurisdiction may be lacking when reviewing the motion for class certification.

complaint was revealed.  However, the actual complaint shows that the plaintiff put no limitation of damages in the pleading and specifically included punitive damages.  *See* Exhibit D.

The real import of *Price*, however, should be the ability of Judge Holmes to assess the amount in controversy because he had *actual evidence* of potential damages in the record and with which to make corresponding ratios for compensatory damages and punitive damages. Google offers zero evidence on any measure of damages for this Court to consider.  *Bell* also underscores the requirement of the removing party to provide *actual evidence* to satisfy the preponderance of the evidence standard before remand is appropriate—so much so that the *Bell* court remanded the decision for further analysis of the "fact intensive" inquiry.  *Id*. at 959.  In the present case, there is no way that this Court can even begin a "fact intensive" inquiry to apply the preponderance of the evidence standard because Google didn't offer any evidence to support any assertion that the amount in controversy could possibly even reach $75,000, much less exceed it.

Third, Plaintiff's request for declaratory relief entails no monetary damages and cannot give rise to punitive damages or attorneys' fees.  As such, the state of the Complaint is one seeking simply a ruling from court—nothing more.  Google has wholly failed to establish that any monetary relief can even exist from the declaratory relief sought.  Procedurally by statute, Plaintiff has not yet filed her "application" for supplemental relief pursuant to § 16-111-110. Accordingly, if the Court were to look at the state of the pleadings upon removal, the only form of relief that is and can be sought at this time is the "declaratory relief."

Fourth, Plaintiff is left to wonder how her allegation limiting not only her "declaratory relief" but "supplemental relief" (that procedurally doesn't even yet exist) would not include every form of monetary consideration proposed by Google.[8]  Plaintiff isn't disclaiming the type

---

[8] Google continuously refers to an apparent set of pleadings with other causes of action that are not contained within Plaintiff's declaratory relief or even supplemental relief, if and when filed.  Throughout the briefing, Google makes

of damages that might be available, but she has disclaimed the amounts that could be made available.  If Plaintiff were awarded any damages, those damages would come through her "declaratory relief" or "supplemental relief," and, thus, be limited to less than $75,000.   If Plaintiff were awarded punitive damages, those would be a part of her "declaratory relief" or "supplemental relief," and thus, be limited to less than $75,000.   If Plaintiff were awarded attorneys' fees and costs, those would be in the form of her "declaratory relief" or "supplemental relief," if and when presented.  As such, those too would be limited to less than $75,000.  There is no form of relief, award, monies, etc. that would not be a part of either Plaintiff's "declaratory relief" or "supplemental relief," all of which she has specifically limited to less than $75,000 as is her right to do under Arkansas law.

Fifth, *Bell* specifically recognizes Arkansas law and the ability to stipulate in pleadings the limitations a plaintiff wants in her case.  Just because *Tuberville* and *Rolwing* involved stipulations, doesn't make stipulations external to the pleadings required.  The whole notion of stipulations came from *Bell* when the court determined that Iowa law didn't allow such matters *within* the pleadings.  Arkansas does.  The fact is that Plaintiff expressly "limited" all of her recovery to less than $75,000.  Again, Plaintiff is left to wonder what additional language could be offered that would not merely repeat or be the same as to "limit."  If Plaintiff limits her recovery to less than $75,000, she doesn't need to disclaim punitive damages because even if punitive damages are awarded, she limits her recovery of them and everything else to less than $75,000.  If Plaintiff prevails and is awarded damages and attorneys' fees, neither she nor her attorneys need to disclaim those types of relief because Plaintiff has limited her recovery of them to less than $75,000.  Again, however, the Court doesn't have to even reach this point in the

---

note of potential recovery beyond the allegations plead or Plaintiff's failure to foreclose all damages.  There are only the allegations that are plead, and all recovery or relief or amounts in controversy will come through only those allegations within the pleading.

analysis because Google has wholly failed to offer any evidence that Plaintiff's damages, relief, attorneys' fees, etc… could ever exceed $75,000.

WHEREFORE, Plaintiff prays that this Court remand Plaintiff's Complaint for Declaratory Judgment to the Circuit Court of Little River County, Arkansas, and for all just and equitable relief to which Plaintiff may be entitled, included, but not limited to, Plaintiff's costs, expenses, and attorneys' fees incurred in connection with responding to Google's Notice of Removal.

Respectfully submitted,

/s/ Sean F. Rommel_____
Sean F. Rommel
Arkansas Bar No. 94158
srommel@wylyrommel.com
James C. Wyly
Arkansas Bar No. 90158
jwyly@wylyrommel.com
**WYLY~ROMMEL, PLLC**
4004 Texas Boulevard
Texarkana, Texas 75503
(903) 334-8646 (Telephone)
(903) 334-8645 (Facsimile)

M. Chad Trammell
Arkansas Bar No. 95125
chad@thetrammellfirm.com
**THE TRAMMELL LAW FIRM, PLLC**
418 North State Line Avenue
Texarkana, AR 71854
(870) 779-1860 (Telephone)
(870) 779-1861 (Facsimile)

Eric T. Bishop
Arkansas Bar No. 89174
**BISHOP & BISHOP**
P.O. Box 609
Ashdown, Arkansas 71822
(870) 898-5058 (Telephone)
(870) 898-8110 (Facsimile)

Bryan Chesshir
Arkansas Bar No. 91054
122 W. Bishop Street
Nashville, Arkansas 71852
(501) 845-5030 (Telephone)
(501) 845-0268 (Facsimile)

George Matteson
Arkansas Bar No. 2000096
Jeff Harrelson
Arkansas Bar No. 96118
**HARRRELSON & MATTESON, P.A.**
300 North State Line Avenue
Texarkana, Arkansas 71854
(870) 772-0300 (Telephone)
(870) 772-0302 (Facsimile)

Chris Travis
Arkansas Bar No. 97093
Travis@gill-law.com
Drake Mann
Arkansas Bar No. 87108
mann@gill-law.com
**GILL ELROD RAGON OWEN
& SHERMAN, P.A.**
425 West Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800 (Telephone)
(501) 372-3359 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

        I hereby certify that on May 3, 2012, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Western District of Arkansas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by first class mail today.

                                        /s/ Sean F. Rommel
                                        Sean F. Rommel