Westlaw.

S. REP. 90-1097                                                              Page 72
S. REP. 90-1097, S. Rep. No. 1097, 90TH Cong., 2ND Sess. 1968,
1968 U.S.C.C.A.N. 2112, 1968 WL 4956 (Leg.Hist.)
**(Cite as: 1968 U.S.C.C.A.N. 2112)**

437, 382 U.S. 959 (1965); New York v. Saperstein, 2 N.Y.2d 210, 140 N.E.2d 252 (1957). What the provision envisions is that the showing be tested in a practical and commonsense fashion. Compare United States v. Ventresca, 85 S.Ct. 741, 380 U.S. 102 (1965).
  Subparagraph (d) requires a statement of the period of time during which the interceptions are to be made. This provision must be read in light of paragraphs (4)(e), (5), and (6), discussed below. Together they require that the duration of an interception not be longer than is necessary under the facts of the particular case. This is a command of the Constitution according to Berger v. New York, 87 S.Ct. 1873, 388 U.S. 41, 59 (1967) and Katz v. United States, 88 S.Ct. 507, 389 U.S. 347, 355-56 (1967). Where it is necessary to obtain coverage to only one meeting, the order should not authorize additional surveillance. Compare Osborn v. United States, 87 S.Ct. 429, 385 U.S. 323 (1966). Where a course of conduct embracing multiple parties and extending over a period of time is involved, the order may properly authorize proportionately longer surveillance, but in no event for longer than 30 days, unless extensions are granted. Compare People v. Sica, 112 Cal.App.2d 574, 247 P.2d 72 (1952); People v. Tarinto, 45 Cal.2d 590, p. 505 (1955). What is important is that the facts in the application on a case-by-case basis justify the period of time of the surveillance.
  Subparagraph (e) requires a full and competent statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications *2191 involving any of the same persons, facilities, or places specified in the application, and the action taken by the judge on each such applications.
  Paragraph (2) provides that the judge may require the applicant to furnish additional testimony or documentary evidence in support of the application. The additional testimony need not be in writing, but it should be under oath or affirmation and a suitable record should be made of it. The use of a court reporter would be the best practice.
  Paragraph (3) authorizes the judge to enter an ex parte order authorizing or approving the interception of wire or oral communications within the territorial jurisdiction of the court. Authorization would be based on an application made pursuant to paragraph (1). Approval would be based on an application made in conformity with paragraph (1) but made pursuant to paragraph (7), discussed below, or section 2517(5), discussed below. The proposed provision recognizes that the judge may properly deny the application altogether, or grant it as suitably modified.
  What the judge must determine before he can issue an order based on the facts submitted to him is specified in subparagraphs (a) through (d). Subparagraph (a) requires that the judge determine that there is probable cause for belief that a particular type of offense enumerated in section 2516, discussed above, is being, has been, or is about to be committed by a particular person. This is intended to reflect the test of the Constitution (Berger v. New York, 87 S.Ct. 1873, 388 U.S. 41, 58-60 (1967)). Subparagraph (b) requires him to determine that there is probable cause for belief that facts concerning that offense may be obtained through such interception. Compare Warden v. Hayden, 87 S.Ct. 1642, 387 U.S. 294 (1967). Subparagraph (c) requires a finding that normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. This finding is discussed above in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

S. REP. 90-1097                                                            Page 73
S. REP. 90-1097, S. Rep. No. 1097, 90TH Cong., 2ND Sess. 1968,
1968 U.S.C.C.A.N. 2112, 1968 WL 4956 (Leg.Hist.)
**(Cite as: 1968 U.S.C.C.A.N. 2112)**

the analysis of paragraph (1)(c). Subparagraph (d) requires a finding of probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or are commonly used by, the person who has committed, is committing, or is about to commit such offense. With the findings required by subparagraphs (a) and (b), the order will link up specific person, specific offense, and specific place. Together they are intended to meet the test of the Constitution that electronic surveillance techniques be used only under the most precise and discriminate circumstances, which fully comply with the requirement of particularity (Berger v. New York, 87 S.Ct. 1873, 388 U.S. 41, 58-60 (1967), Katz v. United States, 88 S.Ct. 507, 389 U.S. 347, 355-56 (1967)).

Subparagraph (4) sets out in subparagraphs (a) through (e) the requirements that each order authorizing or approving the interception of wire or oral communications must meet. Subparagraphs (a) requires the order to specify the identity, if known, of the individual whose communications are to be intercepted. See West v. Cabell, 14 S.Ct. 752, 153 U.S. 78 (1894). Subparagraph (b) requires the order to specify the phone or other communication facilities from which or the place where the authority to *2192 intercept is granted. See Steele v. United States, 45 S.Ct. 414, 267 U.S. 498 (1925). Subparagraph (c) requires a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates. (Berger v. New York, 87 S.Ct. 1873, 388 U.S. 41 (1967). Subparagraph (d) requires that the order note the agency authorized to make the interception and the person who authorized the application so that responsibility will be fixed. Finally, subparagraph (e) requires that the order specify the period of time during which the interception is authorized including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

Paragraph (5) provides that no order may authorize or approve the interception of wire or oral communications for a period of time longer than necessary to achieve the approved objective of the law enforcement officers and in no event longer than 30 days. The provision must be read in light of section 2518(a)(d), discussed above. It is intended to prevent the issuance of blank warrants, condemned in Berger v. New York, 87 S.Ct. 1873, 388 U.S. 41 (1967). It requires the time of the warrant to be carefully tailored to the showing of probable cause. The period of authorized interception if intended to the showing of probable cause. The period of authorized interception is intended to begin when the interception-- in fact-- begins and terminates when the interception-- in fact-- terminates. This will be a question of fact in each case. When it is necessary to conduct surveillance for a period of time longer than that specified, the provision provides for extensions. No arbitrary limit is placed on the number of extensions which can be obtained. The application for an extension must be made in accordance with paragraph (1) discussed above, and the judge must make the findings required by paragraph (3), discussed above. This meets the test of the Constitution (Berger v. New York, 87 S.Ct. 1873, 388 U.S. 41 (1967)). As with initial orders, extensions must be related in time to the showing of probable cause and in no event shall be granted for longer than 30 days. All orders and extensions must be executed as soon as practicable and shall be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

S. REP. 90-1097                                                          Page 74
S. REP. 90-1097, S. Rep. No. 1097, 90TH Cong., 2ND Sess. 1968,
1968 U.S.C.C.A.N. 2112, 1968 WL 4956 (Leg.Hist.)
**(Cite as: 1968 U.S.C.C.A.N. 2112)**

conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter. A wiretap can take up to several days or longer to install. Other forms or devices may take even longer. The provision is intended to recognize that each case must rest on its own facts. But the execution must be prompt (Berger v. New York, 87 S.Ct. 1873, 388 U.S. 41 (1967)). Otherwise, there is a danger that the showing of probable cause and the additional information in the application will become stale. Compare Sgro v. United States, 53 S.Ct. 138, 287 U.S. 206 (1932). This will be a question of fact in each case. The provision finally requires each order or extension to specify that interception must terminate when the objective for which the order was issued is achieved even though the period of authorized interception has not been exhausted or in any event within 30 days. Again, this meets the test of the Constitution (Berger v. New York, 87 S.Ct. 1973, 388 U.S. 41 (1967)).

  Paragraph (b) sets out a procedure for periodic judicial supervision during a period of surveillance. It must read in light of paragraph (1)(d) and paragraph (5), both of which are discussed above. It provides that *2193 when an order to intercept is entered the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued inception. The reports are intended as a check on the continuing need to conduct the surveillance. At any time the judge is convinced the need is no longer established, he may order the surveillance discontinued. Section 2518 (1)(e), discussed above, will serve to insure that extended surveillance is not undertaken lightly. This provision will serve to insure that it is not unthinkingly or automatically continued without due consideration.

  ==Paragraph (7) provides for an emergency procedure for the interception of wire or oral communications.== Where any investigative or law enforcement officer determines: (a) that an emergency situation exists that requires a wire or oral communication to be intercepted before an order authorizing an interception can with due diligence be obtained, and (b) that there are grounds upon which an order could be entered under this chapter to authorize such an interception, this provision authorizes the interception of the communication. Often in criminal investigations a meeting will be set up and the place finally chosen almost simultaneously. Requiring a court order in these situations would be tantamount to failing to authorize the surveillance. The provision reflects existing search warrant law in which the principle of emergency search is well established (Carroll v. United States, 45 S.Ct. 280, 267 U.S. 132 (1925); Schmerber v. California, 86 S.Ct. 1826, 384 U.S. 757 (1966)). Where an interception is made, an application for an order of approval must be made under paragraph (1) of this section within 48 hours after the interception has occurred or begun to occur. In the absence of an order, such interception shall immediately terminate when the communication sought is obtained, or when the application for the order is denied, whichever is earlier. If the application is denied or terminated without an order having been issued, the intercepted communication must be treated as provided for in section 2515, discussed above. An inventory under paragraph (8)(d), discussed below, must be filed. A denial of an application for an order of approval would be appealable under paragraph (10)(b). See Gottone v. United States, 345 F.2d 165(10th), certiorari denied, 86 S.Ct. 234, 382 U.S. 901 (1965).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 4:12-cv-04022-SOH   Document 24-2   Filed 05/03/12   Page 4 of 6 PageID #: 294

Westlaw.

S. REP. 90-1097                                                               Page 75
S. REP. 90-1097, S. Rep. No. 1097, 90TH Cong., 2ND Sess. 1968,
1968 U.S.C.C.A.N. 2112, 1968 WL 4956 (Leg.Hist.)
**(Cite as: 1968 U.S.C.C.A.N. 2112)**

Paragraph (8) sets out safeguards designed to insure that accurate records will be kept of intercepted communications.

Subparagraph (a) requires, if practicable, that the communication be recorded on tape, wire, or other comparable device. The recording must be made in such a way as will protect it insofar as possible from editing or alteration. Appropriate procedures should be developed to safeguard the identity, physical integrity, and contents of the recordings to assure their admissibility in evidence. Immediately upon the termination of the interception, the records must be made available to the judge who issued the order and sealed. Custody of the records shall be wherever the judge orders. Most law enforcement agency's facilities for safekeeping will be superior to the court's and the agency normally should be ordered to retain custody, but the intent of the provision is that the records should be considered confidential court records. They must not be destroyed except upon *2194 court order and must be kept for at least 10 years. Duplicate recordings may be made for authorized disclosure or use under section 2517(a) and (2), discussed above. Finally, the presence of the seal, noted above, is intended to be a prerequisite for use or disclosure under section 2817(3) or (5) unless a satisfactory explanation can be made to the judge before whom the evidence is to be disclosed or before whom permission is sought for other use or disclosure.

Subparagraph (b) provides that applications and orders for authorization shall be treated confidentially. Particularly in renewal situations, they may be expected to contain sensitive information. The provision requires them to be sealed and kept wherever the judge directs, which would normally be with the records themselves. Applications and orders may not be disclosed except incidental to the disclosure or use of the records themselves after a showing of good cause, for example, under (10)(a), discussed below. Applications and orders may not be destroyed except on a court order and must be kept for at least 10 years.

Subparagraph (c) makes explicit the power of the judge to enforce the provisions of subparagraphs (a) and (b) through the contempt power of the court.

Subparagraph (d) places on the judge the duty of causing an inventory to be served by the law enforcement agency on the person named in an order authorizing or approving an interception. This reflects existing search warrant practice. See Federal Rules of Criminal Procedures, 41(c); Berger v. New York, 87 S.Ct. 1873, 388 U.S. 41 (1967); Katz v. United States, 88 S.Ct. 507, 389 U.S. 347 (1967). The inventory must be filed within a reasonable period of time, but not later than 90 days after the interception is terminated. It must include notice of the entry of the order, the date of its entry, the period of authorized or approved interception, and whether or not wire or oral communications were intercepted. On an ex parte showing of good cause, the serving of the inventory may be, not dispensed with, but postponed. For example, where interception is discontinued at one location, when the subject moves, but is reestablished at the subjects new location, or the investigation itself is still in progress, even though interception is terminated at any one place, the inventory due at the first location could be postponed until the investigation is complete. In other situations, where the interception relates, for example, to a matter involving or touching on the national security interest, it might be expected that the period of postponement could be extended almost indefinitely. Yet

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

S. REP. 90-1097                                                          Page 76
S. REP. 90-1097, S. Rep. No. 1097, 90TH Cong., 2ND Sess. 1968,
1968 U.S.C.C.A.N. 2112, 1968 WL 4956 (Leg.Hist.)
**(Cite as: 1968 U.S.C.C.A.N. 2112)**

the intent of the provision is that the principle of postuse notice will be retained. This provision alone should insure the community that the techniques are reasonably employed. Through its operation all authorized interceptions must eventually become known at least to the subject.  He can then seek appropriate civil redress for example, under section 2520, discussed below, if he feels that his privacy has been unlawfully invaded.

Paragraph (9) provides that the contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any Federal or State trial, hearing, or other proceeding unless each party not less than 10 days before the trial *2195 has been furnished with a copy of the court order under which the interception was authorized or approved.  'Proceeding' is intended to include all adversary type hearings.  It would include a trial itself, a probation revocation proceeding, or a hearing on a motion for reduction of sentence.  It would not include a grand jury hearing.  Compare Blue v. United States, 86 S.Ct. 1416, 384 U.S. 251 (1966). The 10-day period is designed to give the party an opportunity to make a pretrial motion to suppress under paragraph (10)(a), discussed below. Compare Segurola v. United States, 48 S.Ct. 77, 275 U.S. 106 (1927). Where it is not possible to furnish the party the information 10 days before trial, and he would not be prejudiced, the judge may waive the requirement.  Such a situation might arise, for example, when an intercepted communication became relevant only as a result of the character of a defense presented by the defendant. Ordinarily, prejudice would be shown only where it was established that the trial could not be reasonably recessed in order that the motion to suppress could be fully heard or that the granting of a mistrial rather than excluding the evidence would be grossly unfair.

Paragraph (10)(a) provides that any aggrieved persons, as defined in section 2510(11, discussed above, in any trial hearing or other proceeding in or before any court department, officer, agency, regulating body or other authority of the United States, a State, or a political subdivision of a State may make a motion to suppress the contents of any intercepted wire or oral communication or evidence derived therefrom.  This provision must be read in connection with sections 2515 and 2517, discussed above, which it limits. It provides the remedy for the right created by section 2515.  Because no person is a party as such to a grand jury proceeding, the provision does not envision the making of a motion to suppress in the context of such a proceeding itself. Normally, there is no limitation on the character of evidence that my be presented to a grand jury, which is enforcible by an individual.  (Blue v. United States, 86 S.Ct. 1416, 384 U.S. 251 (1965). There is no intent to change this general rule.  It is the intent of the provision only that when a motion to suppress is granted in another context, its scope may include use in a future grand jury proceeding.  Nor is there any intent to grant jurisdiction to Federal courts over the Congress itself.  See Hearst v. Black, 66 App.D.C. 313, 87 F.2d 68 (1936)).  Otherwise, the scope of the provision is intended to be comprehensive.  The motion may be made on the ground that:  (i) the communication was unlawfully intercepted, (ii) the order of authorization or approval is insufficient on its face, or (iii) the interception was not made in conformity with the order.  The motion must be made before the trial, hearing, or proceeding unless there was no opportunity to make the motion or the person was not aware of the grounds of the motion, for example, when no notice was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

S. REP. 90-1097                                                              Page 77
S. REP. 90-1097, S. Rep. No. 1097, 90TH Cong., 2ND Sess. 1968,
1968 U.S.C.C.A.N. 2112, 1968 WL 4956 (Leg.Hist.)
**(Cite as: 1968 U.S.C.C.A.N. 2112)**

given under paragraph (9), discussed above. Care must be exercised to avoid having a defendant defeat the right of appeal under paragraph (b), discussed below, by waiting until trial. (Giacona v. United States, 257 F. 450 (5th), certiorari denied, 79 S.Ct. 113, 358 U.S. 873 (1958).) Upon the filing of such a motion to suppress, the court may make available to the person or his counsel such portions of the intercepted communications or evidence derived therefrom as the court determines to be in the interest of justice. This provision explicitly *2196 recognizes the propriety of limiting access to intercepted communications or evidence derived therefrom according to the exigencies of the situation. The motion to suppress envisioned by this paragraph should not be turned into a bill of discovery by the defendant in order that he may learn everything in the confidential files of the law enforcement agency. Nor should the privacy of other people be unduly invaded in the process of litigating the propriety of the interception of an aggrieved person's communications.

  Subparagraph (b) provides that the United States shall have a right of appeal from an order granting a motion to suppress under paragraph (a), above, or the denial of an application for an order of approval. This right is necessary in order that the proposed chapter will receive a uniform interpretation. This provision is intended to reflect existing law in the area of narcotics. Compare 18 U.S.C. 1404 (1966). The United States Attorney must certify to the judge or other official granting the motion that the appeal is not taken for purposes of delay. The appeal must be taken within 30 days after the date the order was entered and prosecuted diligently.

  Section 2519 of the new chapter provides for a series of reports on the administration of the court order system. They are intended to form the basis for a public evaluation of its operation. The reports are not intended to include confidential material. They should be statistical in character. It is intended that the contents of the reports should be governed by 18 U.S.C. 1001 (1958). It will assure the community that the system of court-order electronic surveillance envisioned by the proposed chapter is properly administered and will provide a basis for evaluating its operation.

  ==Section 2520 of the new chapter authorizes the recovery of civil damages. It provides that any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person, as defined in section 2510(6), discussed above, who intercepts, discloses or uses or procures any other person to intercept disclose or use such communication. The scope of the remedy is intended to be both comprehensive and exclusive, but there is no intent to preempt parallel State law.==

  Recovery shall include: (a) actual damages, but not less than liquidated damages at the rate of $100 a day for each day of violation or $1,000, whichever is higher, (b) punitive damages, where malice is shown, and (c) a reasonable attorney's fee and other litigation costs reasonably incurred. Injunctive relief, with its attendant discovery proceedings, is not intended to be available (Pugach v. Dollinger, 81 S.Ct. 650, 365 U.S. 458 (1961)). It is expected that civil suits, if any, will instead grow out of the filing of inventories under section 2518(8)(d). A good faith reliance on a court order would constitute a complete defense to an action for damages. (Compare Pierson v. Ray, 87 S.Ct. 1213, 386 U.S. 547 (1967)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.