# EXHIBIT C

S. Hrg. 99-1006

# ELECTRONIC COMMUNICATION PRIVACY

# HEARING

BEFORE THE

SUBCOMMITTEE ON
PATENTS, COPYRIGHTS AND TRADEMARKS

OF THE

COMMITTEE ON THE JUDICIARY
UNITED STATES SENATE

NINETY-NINTH CONGRESS

FIRST SESSION

ON

## S. 1667

A BILL TO AMEND TITLE 18, UNITED STATES CODE, WITH RESPECT TO THE INTERCEPTION OF CERTAIN COMMUNICATIONS, OTHER FORMS OF SURVEILLANCE, AND FOR OTHER PURPOSES

WEDNESDAY, NOVEMBER 13, 1985

Serial No. J-99-72

Printed for the use of the Committee on the Judiciary





DEPOSITORY

U.S. GOVERNMENT PRINTING OFFICE       1987
57-910 O            WASHINGTON : 1987

For sale by the Superintendent of Documents, Congressional Sales Office
U.S. Government Printing Office, Washington, DC 20402

ception application, while S. 1667 would permit an acting assistant attorney general to approve such applications.

The bill also expands the list of crimes for which a tap or bug order may be obtained. It would include the crimes of escape, chop shop operations, murder for hire, and violent crimes in aid of racketeering.

Again, thank you for the opportunity to testify. I look forward to working closely with you, Mr. Chairman, as well as Senator Leahy and Congressman Kastenmeier, in the days ahead toward the enactment of this legislation.

Senator MATHIAS. Thank you very much, Mr. Moorhead. We appreciate your being here.

Let me ask you both if you see that Senate bill 1667 or House bill 3378 would have any detrimental impact on State laws that are designed to enhance communications privacy.

Mr. KASTENMEIER. Mr. Chairman, if I may respond, I would say it would have no detrimental impact on State laws. It is true that some States have begun to legislate in the area. I have in mind California, which recently enacted a statute to protect cellular telephone calls.

Even more widely, many States have computer crime legislation. Since, basically, the bill, S. 1667, would amend the Wiretap Act, it would, in fact, preempt State law, as that act did originally, and would set one consistent standard.

It is also true that States would be free to enact more restrictive laws in the area if they so chose. So, to that extent, States are unaffected. But, otherwise, there would be a minimum Federal standard, obviously applicable universally in this country.

Mr. MOORHEAD. There is no question that some States have laws that go much farther in this direction than others, and it is very difficult to pass legislation that does not step on some toes someplace.

But I know, insofar as my own State, in particular, the problems that we are approaching with this legislation are very serious. We live in an area in California where the electronics world has come to life in all of its capabilities, and many of the radio and telecommunications people out there are concerned about the problem that this bill is trying to protect.

In the long run, I think that the laws of our State will certainly conform with the legislation that we have here, and I seriously doubt if there will be any adverse effect.

Senator MATHIAS. Well, I would agree with that conclusion. It does seem to me that communication is so uniquely a national function that if you were just concerned with intrastate communication, you would be limiting your protection very severely.

Now, one other question. What we are trying to do here, of course, is to respond to the new communication techniques. And as you have testified, the bill's coverage goes to the transmission and not to the technology. But do you think that we have cast a broad enough net here?

Are we likely to be outdated or rendered obsolete by new developments, or do you think we have phrased it in terms that will meet most of the challenges in the future?